IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 25-277 |
| v. | : | DATE FILED: 6/26/2025 |
| THE SCHOOL DISTRICT OF PHILADELPHIA | : | VIOLATIONS: 15 U.S.C. §§ 2614, 2615(b)(1) (violating the Toxic |
| | : | Substances Control Act) – 8 counts) |

**DEFERRED PROSECUTION AGREEMENT**

The United States Attorney for the Eastern District of Pennsylvania, the United States

Department of Justice ("the United States" or "the government"), and the SCHOOL DISTRICT

OF PHILADELPHIA ("PSD"), a statutorily created public entity in the Commonwealth of

Pennsylvania, created for the purpose of providing elementary and secondary education for public

school students who resided in the City and County of Philadelphia, by and through its

undersigned representatives, enter into this Deferred Prosecution Agreement ("DPA"), the terms

and conditions of which are as follows:

Criminal Information and Acceptance of Responsibility

1.      PSD is charged by Information in this case, waiving any right to indictment, filed in

the United States District Court for the Eastern District of Pennsylvania. The Information charges

PSD with eight counts of violating the Toxic Substances Control Act (TSCA), in violation of Title

15, United States Code, Sections 2614 and 2615(b)(1), from in or about June 2018 through April

2023. The charges arise from PSD's knowing and willful failure to comply with requirements of

subchapter II of TSCA and rules promulgated thereunder. Subchapter II of TSCA

is also known as the Asbestos Hazard Emergency Response Act (AHERA), Title 15,

United States Code, Sections 2641-2656.

2.     This DPA covers all of PSD's criminal violations of TSCA and any other statutes

related to inspections for, detection of, and abatement of, asbestos in Philadelphia public school

buildings, from in or about 2015 through in or about December 2023.

3.     PSD hereby knowingly and voluntarily waives, for the purposes of this DPA, and

for the purposes of any charges by the United States arising out of the conduct described in the

Statement of Facts (attached hereto as Attachment A and incorporated by reference into this

DPA) any objection with respect to venue in the United States District Court for the Eastern

District of Pennsylvania, the Speedy Trial Act under Title 18, United States Code, Sections

3161–74, and Federal Rule of Criminal Procedure 48(b). The United States agrees to defer

prosecution of the PSD pursuant to the terms and conditions described below.

4.     PSD admits, accepts, and acknowledges, for the limited purposes of this DPA, that

it is responsible for the acts of its officers, employees, contractors, and agents, in carrying out the

requirements of AHERA, that give rise to the facts set forth in the Statement of Facts. PSD

admits, accepts, and acknowledges that the facts set forth in the Statement of Facts are true and

accurate. Should the United States pursue the prosecution that is deferred by this DPA, PSD

agrees that it will not dispute the Statement of Facts set forth in this DPA, and, in any such

prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the

United States in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the

government on cross-examination; and (c) evidence at any sentencing or other hearing. In

addition, PSD agrees not to assert any claim, in this proceeding or the prosecution that is deferred by this DPA, under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), or any other federal statute, court decision or rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form. Neither this DPA nor the Information is a final adjudication of the matters addressed in those documents.

## Duration of the DPA

5.     This DPA is effective for a period beginning on the date on which the DPA is filed (the "Effective Date") and ending five years from the date on which the DPA is filed (the "Term"). PSD may request that the Court grant early termination of the Term no earlier than three years following the date on which the DPA is filed. The Court may grant early termination if it finds that PSD is in full compliance with the requirements of AHERA and has been so for at least the prior six months.

## Relevant Considerations

6.     The United States and PSD enter into this DPA based on the unique facts and circumstances of this case, more fully articulated in Attachment B, which facts include:

(a)   PSD partially complied with the requirements of AHERA and its implementing regulations.

(b)   PSD is a public entity that depends on public funding and lacks legal authority to raise its own operating funds, to perform its functions, including those pertaining to the

inspection and abatement of asbestos in school buildings. Historically, PSD has been underfunded.

(c)    PSD has cooperated with this investigation since the investigation was made known to it, and has agreed to continue to cooperate with the United States, expressing an interest and intent to improve its operations, procedures and compliance with AHERA concerning asbestos.

(d)    PSD has already taken steps to improve its policies, procedures and compliance concerning AHERA requirements for asbestos inspections and abatements, including: contracting with an experienced third-party consultant to manage, perform, and report on AHERA inspections; increasing staffing within the Office of Environmental Management Services; purchasing and implementation of an improved data tracking system to manage the large volume of data required in the AHERA program; improving quality control measures; and obtaining additional public and private financing to maintain and advance these purposes.

(e)    A criminal conviction could potentially impede PSD from obtaining grants, funding, and contracts that would be necessary to advance the purposes of this DPA, as well as its overall mission to provide a quality education to Philadelphia public school students.

(f)    PSD and the United States share the common goal of wanting to protect and improve the health and safety of all students, teachers, administrators, and other workers who spend time in PSD buildings, and enter into this DPA for the purpose of creating

better, safer schools.

7.     PSD shall cooperate fully and truthfully with the United States in any and all matters relating to the current federal criminal investigation into violations of federal environmental and related criminal laws involving the inspection, detection, assessment and abatement of asbestos in its public school buildings, including the conduct described in this DPA and the attached Statement of Facts, and other conduct under investigation by the United States, at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term (collectively "Federal Proceeding"). Federal Proceeding also includes any federal investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in any Federal Proceeding. Upon written request by PSD, the United States agrees to notify PSD if the Federal Proceeding has concluded. PSD agrees that full, truthful, and continuing cooperation pursuant to this Paragraph will include the following ("Cooperating Obligations"):

        (a) producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work- product doctrine, in the possession, custody, or control of PSD, that are requested by the United States in its sole discretion in connection with any Federal Proceeding, as well as providing to the United States a log of any responsive documents, information, and other materials that were not provided, including an explanation of the basis for withholding the

materials, and bearing the burden of establishing the validity of any such assertion;

(b)   using best efforts to secure the full, truthful, and continuing cooperation of current and former employees, agents, and contractors of PSD as may be requested by the United States in its sole discretion. Such efforts will include making these persons available at the United States Attorney's office and at other mutually agreed-upon locations for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with the Federal Proceeding; and

(c)   with respect to any information, testimony, documents, records or other tangible evidence provided to the United States pursuant to this DPA, the PSD consents to any and all disclosures to other governmental authorities, including state and local authorities, of such materials as the United States in its sole discretion shall deem appropriate. The United States agrees it shall provide reasonable written notice and an opportunity for PSD to object prior to making such a disclosure.

(d)   PSD will comply with all requirements of the AHERA regulations, 40 C.F.R. §§ 763.80-763.95, for all school buildings containing known or assumed asbestos in the PSD.

(e)   PSD will conduct its 3-year AHERA inspections and 6-month surveillance inspections in a timely manner as defined at 40 C.F.R. §§ 763.85(b) and 763,92(b), and otherwise in full compliance with the law. PSD will issue reports of those inspections in a timely manner, as defined at 40 C.F.R. § 763.85(b)(3)(vii). For purposes of the DPA, an inspection report will be considered timely if issued within 30 days of the completion of

the inspection. While not required by statute or regulation, PSD will issue reports, written verification, or other credible documentation of any corrective actions, including removals, repairs and any other forms of abatement of known or assumed asbestos containing building material (ACBM), as well as sampling and tests of suspected ACBM, in a timely manner. For purposes of the DPA and within six months of execution of the DPA, such documentation of corrective actions, sampling or tests will be considered timely if issued within 90 days of the completion of the activity being reported on. PSD will not be considered in breach of the DPA if a re-inspection or surveillance inspection is conducted, or a required report is issued, within thirty (30) days of applicable deadlines, provided that PSD documents the reasons for such delays.

(f)    PSD will make good faith attempts to ascertain areas of damaged asbestos that would more reasonably be addressed by removal, as opposed to less effective and less permanent means of abatement, and implement removal in those areas. PSD will also consider the nature and magnitude of ACBMs present in school buildings when evaluating school buildings as part of its Facilities Planning Process.

(g)    PSD will take steps to ensure that all corrective actions are accurately documented and that the documentation is sufficient to track the specific corrective actions performed at specific locations, the type of corrective action selected, who made the assessment and selected the type of corrective action, who performed the corrective action, and when the work was assigned, performed and completed.

(h)    PSD will endeavor to obtain sources of funding, both public and private, that

will enable it to more effectively address PSD's needs for asbestos inspections, abatements, and, where necessary, replacements of schools.

(i)  PSD will provide education and training to all employees who are involved in asbestos management, inspections, and abatements, as well as all school principals, maintenance and custodial staff, on the identification and dangers of airborne asbestos and the presence of asbestos in building materials.

(j)  PSD will use best efforts to hire a Director to oversee the execution asbestos abatement projects. PSD will continue to use third-party asbestos project inspectors to oversee the field execution of all abatement projects conducted by the A-Team and to conduct air sampling to determine whether the space where the abatement is conducted meets the requirements and is therefore safe for re-occupancy.

(k)  PSD will report to the United States and the Court semi-annually on the status of compliance with the terms of this agreement as detailed in Paragraph 11 of this DPA.

8.      In addition to the Cooperation Obligations described above, during the Term of the DPA, should PSD learn of or possess any credible evidence or allegation of conduct that may constitute a federal criminal environmental offense or another federal criminal offense committed by officers, employees, agents, or contractors of PSD, the PSD shall promptly report such evidence or allegations to the United States.

<u>Conditional Release from Liability</u>

9.      In return for the full and truthful cooperation of PSD as described above in Paragraphs 7 and 8, and compliance with all other terms and conditions of this DPA:

8

(a)  The United States agrees that, except as provided by this DPA, it will not bring criminal charges against PSD for any act or offense committed before the Effective Date, involving an environmental asbestos offense as described in the Information and the Statement of Facts;

(b)  This conditional release of liability does not provide any protection against prosecution of any individual;

(c)  Failure by PSD to comply fully with the Cooperation Obligations above will void the United States' agreement in Paragraph 9(a), and PSD may be prosecuted criminally for any federal crime of which the United States has knowledge; and

(d)  The United States' agreement in Paragraph 9(a) does not apply to subornation of perjury (18 U.S.C. § 1622), obstruction of justice (18 U.S.C. § 1503 et seq.), contempt (18 U.S.C. §§ 401–02), or conspiracy to commit such offenses. Its agreement in Paragraph 9(a) does not apply to any criminal conduct after the Effective Date. Its agreement in Paragraph 9(a) also does not apply to civil matters of any kind, or to any civil or criminal violation of the federal laws or conspiracy to commit such offenses other than environmental asbestos offenses.

<u>Related Administrative Proceedings</u>

10.    PSD understands that it may be subject to exclusion, suspension, debarment, or exclusion from funding and/or contracts by state or federal agencies based upon this DPA, and that this in no way controls what action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental

agency considering such action of the fact, manner, and extent of the cooperation and remediation of PSD as a matter for that agency to consider before determining what action, if any, to take.

Compliance and Court Reporting

11.      PSD agrees to provide written reports to the Court regarding PSD's compliance with this DPA, and all asbestos-related federal statutes and rules and regulations, including AHERA and the regulations promulgated under AHERA. Reports may be provided electronically.

(a) PSD will submit the required written reports every six (6) months beginning thirty (30) days following the six-month anniversary of the filing of the DPA. PSD will simultaneously provide copies of the reports to the United States.

(b) At a minimum, PSD shall provide the following contents in each report, covering the six-month time period ending thirty (30) days prior to the date the report is due:

(1) Identification and documentation of any failure to perform an asbestos reinspection of any school within 3 years of the previous reinspection, as required by 40 C.F.R. § 763.85(b);

(2) Identification and documentation of any failure to record and submit the results of any reinspection for inclusion in the management plan within 30 days of the reinspection, as required by 40 C.F.R. § 763.85(b)(3)(vii);

(3) Identification and documentation of any failure to perform an asbestos periodic surveillance of any school within 6 months of the previous reinspection or periodic surveillance, as required by 40 C.F.R. § 763.92(b);

(4) In connection with the requirement of 40 C.F.R. § 763.90 that PSD perform timely and appropriate response actions sufficient to protect human health and the environment, PSD shall provide a list of any areas of damaged or significantly damaged thermal system insulation asbestos containing material (ACM), damaged friable surfacing ACM or damaged friable miscellaneous ACM, in any school, for which PSD has not performed one of the following response actions as of the date of the report: encapsulation, enclosure, removal, or repair. The list shall provide the earliest date that the damage or serious damage to the ACM was first identified for each area. PSD may also provide any additional detail about the circumstances or abatement plan related to any item identified in the list;

(5) A list of any newly identified asbestos-containing building material (ACBM) identified in a reinspection or periodic surveillance of any school that was not previously reported in an inspection or re-inspection report as required by 40 C.F.R. § 763.85(a) & (b). PSD may also provide any additional detail about the circumstances or abatement plan related to any item identified in the list;

(6) Identification and documentation of any other noncompliance with 40 C.F.R. Part 763, Subpart E, in any school; and

(7) For purposes of this paragraph, the term "school" refers to any school building subject to the requirements of 40 C.F.R. Part 763, Subpart E, for which PSD is the local education agency (LEA) under AHERA and the above regulations.

(c) PSD will provide the Court and the United States full access to all records, data, personnel and other information not subject to an applicable privilege, associated with PSD's performance of its obligations under this DPA, and all asbestos-related federal statutes and rules and regulations, including AHERA and the regulations promulgated under AHERA.

## Deferred Prosecution

12.    In consideration of the undertakings agreed to herein by PSD, the United States agrees that any prosecution of PSD for the conduct set forth in the Information and the Statement of Facts be and hereby is deferred for the Term.

13.    The United States further agrees that if PSD fully complies with all obligations under this DPA, the United States Attorney's Office for the Eastern District of Pennsylvania and the Environmental Crimes Section of the Department of Justice will not continue the criminal prosecution of PSD for the offenses described in Paragraph 1 of the DPA and, at the conclusion of the Term, this DPA shall expire. Within thirty (30) days of the expiration of the Term, the United States shall seek dismissal with prejudice of the Information described in Paragraph 1 of the DPA.

## Breach of this DPA

14.    If the United States determines, in its sole discretion, that during the Term of this

12

DPA the PSD has (a) committed any felony offense or environmental offense under federal law; (b) provided to the United States deliberately false, misleading, or materially incomplete information; (c) failed to satisfy any Cooperation Obligations as set forth in Paragraphs 7 and 8 of this DPA; (d) failed to satisfy any reporting obligations to the Court as set forth in Paragraph 11 of this DPA or reported to the Court any deliberately false, misleading, or materially incomplete information; or (e) otherwise failed to satisfy the requirements or obligations under this DPA, regardless of whether the United States becomes aware of such a breach after the Term is complete, PSD shall thereafter be subject to prosecution for any federal criminal violation related to the inspection, detection, assessment or abatement of asbestos in the Philadelphia public school buildings of which the United States has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the United States in the United States District Court for the Eastern District of Pennsylvania or any other appropriate venue. Any such prosecution may be premised on information provided by any source, including but not limited to PSD.

15.    Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the United States prior to the date of the signing of this DPA that is not time-barred by the applicable statute of limitations on the Effective Date may be commenced against PSD, notwithstanding the expiration of the statute of limitations between the Effective Date and the expiration of the Term. Thus, by signing this DPA, PSD agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the Effective Date shall be tolled for a maximum of the duration of the Term.

16.     In the event the United States determines that PSD has breached this DPA, the United States agrees to provide PSD with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, PSD shall have the opportunity to respond to the United States in writing to explain the nature and circumstances of such breach, as well as the actions PSD has taken to address and remediate the situation, which the United States shall consider in determining whether to pursue prosecution of PSD. The decision whether to pursue prosecution of PSD shall be in the sole discretion of the United States.

17.     During the term of this DPA, PSD will have a reasonable opportunity to cure any alleged environmental violations or violations of this DPA identified by: (1) PSD and reported to the Court; (2) any regulatory agency, including the Environmental Protection Agency (EPA), (3) the United States District Court (including the United States Probation Office); or (4) the government.

18.     In the event that the United States determines that PSD has breached this DPA: (a) all statements made by or on behalf of PSD to the United States or to the Court (or the United Sates Probation Office), including the Statement of Facts, and any testimony given by any individual before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this DPA, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against PSD; and (b) in any such prosecution, PSD shall not assert any claim under the United

States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal law or rule that any such statements or testimony made by or on behalf of PSD prior or subsequent to this DPA, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether any conduct or statement of any current or former director, officer, or employee, or any person acting on behalf of, or at the direction of, PSD, will be imputed to PSD for the purpose of determining whether PSD has violated any provision of this DPA shall be in the sole discretion of the United States.

19.      PSD acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if PSD breaches this DPA and this matter proceeds to judgment. PSD further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this DPA binds or restricts the Court in the exercise of such discretion.

20.      On the date that the Term expires or on the first business day thereafter, PSD, by its Superintendent or through counsel, will certify to the United States that PSD has met the disclosure and compliance obligations set forth in this DPA. The certification will be deemed a material statement and representation by PSD to the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the judicial district in which this DPA is filed.

<u>Public Statements by PSD</u>

21.      PSD expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for PSD, make any public

statement, in litigation or otherwise, contradicting the acceptance of responsibility by PSD set forth above or as described in the Statement of Facts. Any such contradictory statement shall, subject to cure rights of PSD described below, constitute a breach of this DPA, and PSD thereafter shall be subject to prosecution as set forth in this DPA. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to PSD for the purpose of determining whether it has breached this DPA shall be at the sole discretion of the United States. If the United States determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the United States shall so notify PSD, and PSD may avoid a breach of this DPA by publicly repudiating such statement(s) within five (5) business days after notification. PSD shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of PSD in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of PSD.

<u>Limitations of Binding Effect of this DPA</u>

22.     This DPA is binding on PSD, the United States Attorney's Office for the Eastern District of Pennsylvania, and the Environmental Crimes Section of the United States Department of Justice, but specifically does not bind any other component of the Department of Justice, other federal agencies, any state or local law enforcement or regulatory agencies, or any other

authorities.

Notice

23.     Any notice to the United States under this DPA shall be given by personal

delivery, overnight delivery by a recognized delivery service, or registered or certified mail,

addressed to:

David E. Troyer
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Any notice to PSD under this DPA shall be given by personal delivery, overnight

delivery by a recognized delivery service, or registered or certified mail, addressed to:

Superintendent of Schools
School District of Philadelphia
440 North Broad Street
Philadelphia, PA 19130

and

Anne Carpenter, Esquire
Nadira Clarke, Esquire
Hogan Lovells US LLP
555 13th Street, N.W.
Washington, D.C. 20004-1109

Steven Solow, Esquire
Solow PLLC
1717 K Street, N.W., Suite 900
Washington, D.C. 20006

Entirety of Agreement

24.     This Deferred Prosecution Agreement, including its Attachments, sets forth all the

terms of the agreement between PSD and the United States. No amendments, modifications, or additions to this DPA shall be valid unless they are in writing and signed by the United States, the attorney(s) for PSD, and a duly authorized representative of PSD.

Date: 6/26/25

**DAVID METCALF**
**United States Attorney**

SCHOOL DISTRICT OF PHILADELPHIA

By: _____
Representative, Phila. School District

By: _____        By: _____
Steven Solow, Esquire                                        Anne Carpenter, Esquire

## ATTACHMENT A: STATEMENT OF FACTS

The defendant PSD, within the time frames charged in the Information, knowingly and regularly failed to conduct timely three-year inspections of school buildings, as mandated by law. PSD also failed to conduct timely six-month walk-through surveillance inspections of school buildings, as mandated by law. PSD and its agents purposely delayed inspections, and reports of inspections, beyond the time periods mandated by law. PSD knowingly and regularly failed to make necessary repairs to damaged asbestos-contained materials and to remove damaged friable asbestos in a timely and appropriate manner.

The defendant PSD created an in-house asbestos team, known as the "A-team," that was responsible in part for responding to complaints of damaged and exposed asbestos, including those marked as "imminent hazards," and to properly remediate and/or remove damaged asbestos material, while PSD also contracted with private environmental firms as independent contractors to conduct inspections and perform some of the same type of asbestos abatement work. However, PSD failed to properly supervise the work of the A-team, and failed to properly monitor and oversee asbestos inspections performed by independent contractors.

PSD used a reporting and data management system, known as "Mojo," which was not used or accessed by supervisors who had authority over asbestos complaints and projects. Partly due to the limitations of this system, PSD did not keep up to date with work orders and inspections, and kept inadequate records of asbestos work that was done and/or requested.

PSD employed various people charged with the responsibility of identifying asbestos in schools, promptly responding to complaints of damaged asbestos, remediating and removing

damaged asbestos, conducting timely inspections and surveillances of school buildings, and

otherwise complying with federal laws regarding asbestos in schools. At various times within the

time frame of this information, each of these individuals took actions, and/or failed to take actions,

and agreed to act and/or fail to act, consistent with the offenses charged in the Information.

As a result of the misconduct of the defendant PSD, it became necessary to temporarily

close some schools, due to multiple areas of dangerous asbestos exposure in each of these schools.

Some of these areas of asbestos exposure were areas that had not been previously identified in prior

inspections or were previously identified but improperly addressed.

As a result of the actions and inactions of the defendant PSD, students, faculty and staff

were placed at risk of exposure to friable asbestos.

As specific examples of PSD's failures to comply with TSCA and AHERA requirements,

and to illustrate the depth and breadth of these problems, the government sets forth the following:

1.      On or about April 15, 2015, the AHERA management plan for Franklin Learning Center, 616 North 15th Street, Philadelphia, noted damage to material reported as asbestos in the cafeteria ceiling that was in danger of falling on students.

2.      From on or about November 6, 2017 to in or about January 2019, the defendant PSD failed to conduct any required six-month surveillance inspections of Laura Carnell Elementary School, 1100 Devereaux Street, Philadelphia.

3.      On or about August 2, 2018, an "imminent hazard" and "emergency project" was reported, and later reported as abated, at Bartram High School, 2401 South 67th Street, Philadelphia.

4.      On or about August 6, 2018, as part of abatement planning, approximately eight open and uncompleted asbestos work orders were reported regarding Frankford High School, 5000 Oxford Avenue, Philadelphia.

5.      On or about August 26, 2018, "high" asbestos amounts were discovered in air samples taken, as part of an abatement, at J. Hampton Moore Elementary School, 6900 Summerdale Avenue, Philadelphia. District contractors recleaned the area and took air samples prior to re-occupancy.

6. In or about January 2019, the defendant PSD conducted a three-year inspection of the Laura Carnell Elementary School, and reported ten additional areas containing confirmed asbestos that had been absent from the October 2015 three-year report.

7. On or about August 23, 2019, damaged asbestos, including an "imminent hazard," was reported, and later reported as abated, at Franklin Learning Center.

8. On or about August 7, 2019, damaged asbestos was reported, during a six-month surveillance, in the auditorium stage area of Sharswood Elementary School, 2300 South 2nd Street, Philadelphia.

9. On or about September 13, 2019, damaged asbestos was reported during a six-month surveillance, in multiple classrooms and a faculty room at William M. Meredith Elementary School, 725 South 5th Street, Philadelphia.

10. On or about October 1, 2019, an "imminent hazard" of damaged asbestos was reported, and later reported as abated, in a classroom and student area at Nebinger Elementary School, 601 Carpenter Street, Philadelphia.

11. On or about October 3, 2019, five pending uncompleted jobs, out of eight previously reported jobs, regarding damaged asbestos were reported at Northeast High School, 1601 Cottman Avenue, Philadelphia.

12. On or about December 2, 2019, an "imminent hazard" of damaged asbestos was reported, and later reported as abated, at Conwell Middle School, 1829 Clearfield Street, Philadelphia.

13. On or about December 5, 2019, "imminent hazards" of damaged asbestos were reported, and later reported as abated, in a classroom, hallway, kitchen, and computer room at Roosevelt Middle School, 430 East Washington Lane, Philadelphia.

14. On or about December 5, 2019, "imminent hazards" of damaged asbestos were reported, and later reported as abated, in three rooms, including a cafeteria and men's room at Murrell Dobbins Technical High School, 2150 West Lehigh Avenue, Philadelphia.

15. On or about December 5, 2019, "imminent hazards" of damaged asbestos were reported, and later reported as abated, in the kitchen and men's room at Northeast High School.

16. On or about December 5, 2019, an "imminent hazard" of damaged asbestos was reported, and later reported as abated, in the boiler room at Sullivan Elementary School, 5300 Ditman Street, Philadelphia.

17. On or about December 6, 2019, damaged asbestos was reported, and later reported as abated, at Bethune Elementary School, 3301 Old York Road, Philadelphia.

18. From on or about December 9, 2019 to on or about December 20, 2019, damaged asbestos, including "imminent hazards," were reported, and later reported as abated, in

approximately 15 areas, including classrooms, a kinesiology lab, and school store, at Roxborough High School, 6498 Ridge Avenue, Philadelphia.

19.     On or about December 11, 2019, damaged asbestos, including "imminent hazards," were reported, and later reported as abated, in approximately seven areas, at Northeast High School.

20.     On or about December 13, 2019, damaged asbestos, including "imminent hazards," were reported, and later reported as abated, in approximately five areas, including classrooms and a library, at Bartram High School.

21.     On or about December 13, 2019, damaged asbestos, including an "imminent hazard," was reported, and later reported as abated, at Gompers Elementary School, 5701 Wynnefield Avenue, Philadelphia.

22.     On or about December 16, 2019, damaged asbestos, including "imminent hazards," were reported in approximately 28 areas, including classrooms, a faculty lounge, and boys' rest room, at Richmond Elementary School, 2900 Belgrade Street, Philadelphia.

23.     On or about December 17, 2019, damaged asbestos, including an "imminent hazard" was reported, and later reported as abated, in approximately five areas at Kensington High School, 2051 East Cumberland Street, Philadelphia.

24.     On or about December 18, 2019, damaged asbestos was reported in approximately 22 areas, including classrooms, cafeterias, a lounge, a gymnasium, and two counselors' offices, at Woodrow Wilson Middle School (now known as Castor Gardens Middle School), 1800 Cottman Avenue, Philadelphia.

25.     On or about December 19, 2019, damaged asbestos, including an "imminent hazard," was reported, and later reported as abated, in the cafeteria at Franklin S. Edmonds Elementary School, 8025 Thouron Avenue, Philadelphia.

26.     From on or about December 19, 2019 to on or about December 23, 2019, damaged asbestos, including "imminent hazards," were reported, and later reported as abated, in approximately 130 areas, which areas included approximately 100 different classrooms, hallways, offices, a library, gym, attic, an art room, and a rest room at Laura Carnell Elementary School.

27.     From on or about December 19, 2019 to on or about December 23, 2019, the six-month surveillance at Laura Carnell Elementary School identified approximately 89 areas of damaged asbestos that had not been identified in previous inspections.

28.     From on or about December 19, 2019 to on or about December 23, 2019, the six-month surveillance at Laura Carnell Elementary School identified approximately five areas where previously reported encapsulation of damaged asbestos was not performed, and approximately five additional areas where previously reported encapsulation of damaged asbestos had not been properly encapsulated, including merely wrapping damaged asbestos with duct tape.

29.    From on or about December 19, 2019 to on or about December 23, 2019, the six-month surveillance at Laura Carnell Elementary School identified 8 linear feet of damaged asbestos on 2" to 6" pipe insulation in the gym storage area as an imminent hazard; the same 8 linear feet of damaged asbestos having been identified in the 2015-2016 three-year re-inspection report and four intervening 6-month surveillance reports prior to the December 2019 surveillance.

30.    On or about December 20, 2019, the defendant PSD closed the Laura Carnell Elementary School due to multiple areas of damaged asbestos, and later reported abating those areas.

31.    On or about December 23, 2019, damaged asbestos, including an "imminent hazard," was reported and later reported as abated, in the gymnasium at William L. Sayre High School, 5800 Walnut Street, Philadelphia.

32.    On or about December 23, 2019, damaged asbestos, including "imminent hazards," were reported in approximately 11 areas at James R. Ludlow Elementary School, 550 Master Street, Philadelphia.

33.    On or about December 23, 2019, damaged asbestos, including an "imminent hazard," was reported, and later reported as abated, in a classroom closet at Charles W. Henry Elementary School, 601 Carpenter Lane, Philadelphia.

34.    On or about January 13, 2020, the defendant PSD re-opened the Laura Carnell Elementary School.

35.    On or about February 13, 2020, the defendant PSD closed the Clara Barton Elementary School, 4600 Rosehill Street, Philadelphia, due to damaged asbestos.

36.    On or about February 24, 2020, the defendant PSD re-opened the Clara Barton Elementary School.

37.    On or about March 9, 2020, an "imminent hazard" of damaged asbestos was reported, and later reported as abated, in a basement hallway near the cafeteria and next to the boiler room, at Forrest Elementary School, 7300 Cottage Street, Philadelphia.

38.    In or about August 2020, a person known to the grand jury as Teacher #1 contracted, and was diagnosed with, mesothelioma, a deadly and incurable form of cancer caused by exposure to, and the inhalation of, airborne asbestos particles.

39.    In or about 2021, the defendant PSD failed to conduct a three-year inspection of the Clara Barton Elementary School, the previous such inspection having been conducted in approximately November 2018, and did not conduct a three-year inspection until approximately March 2022.

40.    In or about October 2022, the defendant PSD conducted a tardy three-year inspection of Charles W. Henry Elementary School, the previous one having been conducted in December 2018.

41.     In or about October 2022, the defendant PSD conducted a tardy three-year inspection of Southwark Elementary School, at 1835 South 9th Street, Philadelphia, the previous one having been conducted in July 2018.

42.     In or about December 2022, the defendant PSD conducted a tardy three-year inspection of William M. Meredith Elementary School, the previous one having been conducted in June 2018.

43.     In or about December 2022, the defendant PSD conducted a tardy three-year inspection of S. Weir Mitchell Elementary School, at 5500 Kingsessing Avenue, Philadelphia, the previous one having been conducted in October 2018.

44.     In or about February 2023, the defendant PSD reported the discovery of asbestos in certain plaster of Building 21 Alternative High School, 6501 Limekiln Pike, Philadelphia.

45.     In or about March 2023, the defendant PSD issued its report of a tardy three-year inspection of William M. Meredith Elementary School performed in or about December 2022, in which it omitted or deleted 8 areas of confirmed asbestos that had been reported in the previous three-year inspection report in June 2018.

46.     On or about March 3, 2023, the defendant PSD conducted a tardy three-year inspection, following tardy 6-month surveillances of the Building 21 Alternative High School, and closed the school due to damaged asbestos.

47.     In or about March 2023, the defendant PSD conducted a tardy three-year inspection of the Franklin Learning Center, the previous one having been conducted in November 2018.

48.     On or about March 2023, the defendant PSD conducted a tardy three-year inspection of the Simon Gratz Mastery Charter High School, 1798 West Hunting Park Avenue, Philadelphia, the previous one having been conducted in January 2019.

49.     On or about March 8, 2023, the defendant PSD closed the Simon Gratz Mastery Charter High School, due to damaged asbestos.

50.     In or about April 2023, the defendant PSD conducted a tardy three-year inspection of Universal Vare Charter School, at 2100 South 24th Street, the previous one having been conducted in November 2018. The defendant PSD did not issue the report of the April 2023 inspection until in or about August 2023.

51.     In or about April 2023, the defendant PSD conducted a tardy three-year inspection of Frankford High School, the previous one having been conducted in January 2019. The defendant PSD did not issue the report of the April 2023 inspection until in or about October 2023.

52.     In or about April 2023, the defendant PSD conducted a tardy three-year inspection of Benjamin Franklin High School, the previous one having been conducted in January 2019. The defendant PSD did not issue the report of the April 2023 inspection until in or about October 2023.

53.    On or about April 7, 2023, the defendant PSD closed the S. Weir Mitchell Elementary School, due to damaged asbestos.

54.    On or about April 14, 2023, the defendant PSD closed Frankford High School, due to damaged asbestos.

55.    On or about April 24, 2023, the defendant PSD closed the Charles W. Henry Elementary School, due to damaged asbestos.

56.    On or about April 28, 2023, the defendant PSD closed the Universal Vare Charter School, due to damaged asbestos.

57.    On or about May 2, 2023, the defendant PSD re-opened the Building 21 Alternative High School.

58.    In or about June 2023, the defendant PSD conducted a tardy three-year inspection of Roxborough High School, the previous one having been conducted in November 2018.

59.    In or about July 2023, the defendant PSD filed its report of a three-year inspection of the Clara Barton Elementary School, conducted in March 2022, in which it reported 24 additional areas of asbestos that were not reported in November 2018, while deleting approximately ten areas of asbestos reported in that 2018 report.

60.    On or about October 27, 2023, the defendant PSD closed the Southwark Elementary School, due to damaged asbestos.

61.    In or about November 2023, the defendant PSD issued its report of a three-year inspection of the Laura Carnell Elementary School for inspections that had been performed from on or about October 18 through October 29, 2021.

## ATTACHMENT B: IMPROVED COMPLIANCE BY PSD

The United States acknowledges that PSD operates the largest public school system in the Commonwealth of Pennsylvania, serving students in one of the poorest cities in the United States. PSD is a publicly funded entity that constantly operates under severe budget restraints, and that those budget restraints have a negative impact on its efforts to timely inspect, abate, and remove damaged asbestos in its schools. By law, PSD is not able to raise funds or increase revenue through taxes.

The United States recognizes that PSD operates approximately 339 school buildings, the vast majority of which were built prior to 1980, when asbestos was commonly used in building materials due its heat-resistant and fire-retardant qualities. The average age of PSD's buildings is 75 years, with some more than 100 years old. Approximately 297 buildings are in the AHERA program.

The United States also acknowledges that PSD has cooperated with this investigation and has accepted responsibility for its failures to abide by legal requirements to timely inspect and abate damaged asbestos. Also, as summarized in Paragraph 6 of the DPA, the PSD has already engaged in various efforts to improve its procedures and performance in fulfilling these legal obligations. These improvements include the hiring of qualified consultants and inspectors, the purchase and implementation of an improved data tracking system, improved quality control measures, and the obtaining of additional financing to maintain and advance these purposes.

Specifically, since the inception of this criminal investigation, PSD has already taken the following positive steps to enhance its policies, procedures, and performance:

1. Following years of underfunding by the state, in 2021, PSD was able to bring on an external consultant, Deluca Advisory Services (DLA), to PSD's asbestos management program. To help refocus the historically under-resourced program, the consultant leveraged significant experience from their work with the formation of the New York City School Construction Authority, an entity that was focused on revitalizing asbestos management in New York City's public school system.

2. DLA quickly hired a Philadelphia local individual with more than 20 years of experience in environmental management, including as head of SEPTA's Environmental Services. PSD was later able to hire this highly qualified individual as the Executive Director of OEMS.

3. Over the last several years, with the help of DLA, other external consultants, and the new Executive Director of OEMS, PSD has expanded the scope, efficiency, and impact of its AHERA program, expanding its OEMS staff from 19 to 33 workers, and its budget for environmental work from $21 million to $61 million.

4. PSD expanded inspections to include spaces traditionally considered inaccessible (i.e. certain attics and crawl spaces), and has moved beyond the baseline requirements of AHERA to expand the number of identified materials in any given space, thereby better documenting asbestos and non-asbestos containing materials.

5. PSD also launched a new inspection management software in 2021 known as "DoneSafe" That supports the AHERA program. This software helped to digitize and streamline the massive amount of data that historically was largely maintained in paper form.

6. With DoneSafe, PSD is now able to access updated data from an inspection regarding the status of asbestos containing materials in less than 30 days. That data is compiled into a formal report that can be shared with the public in less than 60 days.

7. Using money received from the City of Philadelphia, PSD recently completed a software needs assessment that will support an RFP to select even more sophisticated software to support and automate AHERA data management.

8. PSD refocused its internal Asbestos Management Team (the "A-Team") as a quick response group to more efficiently target small-scale asbestos abatements in support of routine maintenance. For other larger scale asbestos abatements, PSD maintains a roster of 7-10 local abatement contractors.

9. PSD has normalized its 3-year and 6-month inspection frequency across all District-owned facilities. Every District building is now inspected twice per year and, since late 2022, PSD has completed nearly 1200 new inspections.

10. This massive and resource-intensive inspection normalization was supported by the engagement of a nationally recognized firm, Tetra Tech, which has the resources and scale to support the constant inspections, planning, and data assessment needed to meet the three- and six-year frequency.

11. PSD has been able to support the estimated $10.5 million cost of Tetra Tech through new funding sources, including a multi-year grant by the University of Pennsylvania and increased federal infrastructure funding under the American Rescue Plan Act (ARPA).

PSD has also committed to continue broad compliance commitments as part of the DPA.